Filed 12/16/13  In re J.O. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.O., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E057924 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1200844) |
| v. | OPINION |
| J.O., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Pamela J. Walls, County Counsel, and Tanya E. Joyce, Deputy County Counsel, for Plaintiff and Respondent.

1

# I

## INTRODUCTION

Father appeals from orders of the juvenile court involving an infant son, J.O., born in November 2012 and who has been placed with mother. Father and mother are also the parents of a daughter, Ja.O., who was born in 2007 and has been adopted. Mother has another daughter, A.M., born in 2002, who is in her father's custody.

Father contends insufficient evidence supports the juvenile court's jurisdictional and dispositional findings and the court abused its discretion by denying him reunification services. We reject father's contentions and affirm the judgment.

# II

## STATEMENT OF FACTS AND PROCEEDINGS

*A. Detention*

CPS[1] filed the original dependency petition in this case in November 2012, shortly after the birth of J.O. The petition alleged parents' failure to protect (Welf. & Inst. Code, § 300, subd. (b))[2] based on the parents' mutual engagement in domestic violence; the parents' failure to reunify with other children; father's criminal history; and father's

---

[1] Riverside County Department of Public Social Services, Child Protective Services.

[2] All further statutory references are to the Welfare and Institutions Code unless stated otherwise.

2

substantiated sexual abuse of J.O.'s half-sister, A.M. The petition also alleged the parents' neglect or abuse of siblings. (§ 300, subd. (j).) CPS recommended J.O. be placed with mother, based on a signed safety plan that father would not have unsupervised contact with the child.

The detention report included the following information. In 2001, father was accused of ongoing molestation of his girlfriend's sister, who was 14 years old. The sister complained that father had fondled her breasts and buttocks when she was sleeping and had exposed himself to her. He had also spied on her when she was bathing and tried to ply her with drugs and alcohol. The girlfriend reported father had forced her to have sex by choking her. The disposition was substantiated in January 2002.

In a previous dependency proceeding, mother's two daughters were taken into protective custody by San Diego County in 2008. A.M. told an investigator that father had "tickled" her crotch one night when she was about five years old. Parents had participated in reunification services until mother violated the conditions of visitation by spending the night with father, smoking marijuana, and allowing him to have contact with their daughter, Ja.O. Mother admitted having unresolved feelings for father. After reunification services were terminated, A.M.'s father had sole custody and mother was allowed supervised visitation. Ja.O. was adopted.

While mother and J.O. were still in the hospital, CPS interviewed father who stated he was living with the paternal grandmother (PGM) in Lake Elsinore. Father had

3

used marijuana in the past for pain. Father admitted he had lost his job and mother was living with him in the Lake Elsinore household, which was occupied by seven family members and three unrelated adults and their three children—a total of 13 residents in six bedrooms. Father, mother, and J.O. had their own room. Father was receiving $667 monthly in assistance and the PGM was not charging him rent. Father was trying to find work as a security guard. Father admitted an incident a year before in which mother was was hit in the face by a door during a struggle with father. Father had completed part of a program of domestic violence classes. Father denied any sexual abuse of A.M. and became agitated during the interview. Mother was still visiting A.M. but he did not participate in visitation.

CPS interviewed mother who denied using drugs or drinking. Mother reported a history of being sexually molested by her biological father between ages three and six years old. Mother agreed she and father had been together off and on for nine years with uncertain plans to marry. When she and father had struggled physically the year before, the door hit her in the face. Although a restraining order was issued against father in December 2011, their relationship had resumed and J.O. had been conceived in February 2012. Mother had supervised visits with A.M. She lost custody of Ja.O. because of her contact with father. Mother did not think father had molested A.M. but she was willing to give up contact with father if she could keep custody of J.O. The maternal grandmother (MGM) was also willing to have placement of him.

4

Mother's criminal history involved charges for driving under the influence and a hit and run accident in 2006, causing suspension of her driver's license in 2011. Father's criminal history involved driving under the influence and drug offenses in 2004 and domestic violence against mother in 2011.

CPS concluded that detention of J.O. was appropriate because of the parents' past failures at reunification, father's two substantiated sexual abuse allegations, which he denied, and mother's continuing relationship with father.

At the detention hearing in November 2012, J.O. was detained as to father but not mother. The court ordered supervised visitation of two times per week for father.

B. *Jurisdiction and Disposition*

CPS filed an amended dependency petition in January 2013. At the combined jurisdiction/disposition hearing, CPS presented documents from the dependency case involving A.M. and Ja.O: (1) the July 2008 jurisdiction/disposition report; (2) a December 2009 status review report; and (3) a July 2010 section 366.26 report. In those documents, A.M. described father's conduct in which he pulled up her pajamas and touched her genitals, tried to force her to touch his penis, struck her on the buttocks, forced her to watch mother and father having sex and father masturbating, and digitally penetrated her. In July 2009, mother allowed father to have unsupervised contact with Ja.O. while mother was smoking marijuana and spending the night with father. Father had not completed sex abuse therapy and treatment. Mother had failed to protect A.M.

In January 2013, father's counsel stated father had been visiting his son consistently and wanted to foster a relationship in the future. Father requested reunification services. On the second day of the hearing, the court sustained all allegations of the amended petition. The court declared J.O. a dependent of the juvenile court, ordered family maintenance services for mother, and denied reunification services as to father. The denial was based on section 361.5, subdivision (b)(10) and (11). The court stated that services would not be in the minor's best interest because father had not shown he was "not a risk." Father's visits were reduced to one time per week. The matter was ordered transferred to San Diego County, where mother was living.

III

JURISDICTIONAL FINDINGS UNDER SECTION 300, SUBDIVISION (b)

Father contends there was no substantial evidence the newborn was at risk of serious physical harm or illness, based on domestic violence, the prior substantiated sexual abuse allegations, the parents' failure to benefit from previous services, the termination of parental rights as to Ja.O., the father's criminal history, or the parents' substance abuse.

A juvenile court may find that a minor comes within the provision of section 300, subdivision (b), if it finds, by a preponderance of the evidence, that the "minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness" by at least one of four specified circumstances. (§ 300, subd. (b).) In the instant

6

case, the petition alleged two of the four enumerated circumstances: "as a result of the failure or inability of his or her parent or guardian to supervise or protect the child adequately" and "by the inability of the parent or legal guardian to provide regular care for the child due to the parent's or legal guardian's mental illness, developmental disability or substance abuse." (§ 300, subd. (b).) It effectively requires a showing that, at the time of the jurisdictional hearing, the child is at substantial risk of serious physical harm or illness in the future. (*In re David M.* (2005) 134 Cal.App.4th 822, 829.)

"'In juvenile cases, as in other areas of the law, the power of an appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.'" (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) Substantial evidence must be reasonable in nature, credible, and of solid value. (*In re Angelia P.* (1981) 28 Cal.3d 908, 924.)

Father contends the single incident of domestic violence is insufficient to support an adjudicatory finding under section 300, subdivision (b). Each parent gave a similar version of the incident, which occurred when they found out Ja.O. was being adopted. They argued and, when father tried to leave, they struggled over the door, which hit mother in the face. Later, the court issued a restraining order. Father attended some

7

domestic violence classes without completing them.  Eventually, the parents reconciled, violating the restraining order.

A child may be at substantial risk of serious physical harm when living in a household where domestic violence is recurring.  (*In re Heather A.* (1996) 52 Cal.App.4th 183; *In re R.C.* (2012) 210 Cal.App.4th 930, 941-942.)  In contrast, if domestic violence is not ongoing and is not likely to continue, jurisdiction will not be supported under section 300, subdivision (b).  (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717, 718.)  In *In re Alysha S.* (1996) 51 Cal.App.4th 393, 398, the appellate court held that one domestic violence incident occurring one year earlier, for which the father was arrested and which did not happen in view of the child, was insufficient to support a jurisdictional finding under section 300, subdivision (b).

Here the domestic violence incident occurred before J.O. was born, apparently precipitated by the stressful situation involving Ja.O.'s adoption.  Father contends it was not very serious and, at the time of the jurisdictional hearing, J.O. was not subject to a substantial risk of serious physical harm from domestic violence.

We disagree with father.  Although father seeks to minimize the domestic violence, the record shows he was criminally convicted under Penal Code section 243 and was the subject of a restraining order.  Father failed to complete the domestic violence courses.  He violated the restraining order.  His behavior did not connote a man who had been rehabilitated and was no longer a danger to mother or their children.

8

The dependency petition also alleged J.O. was at substantial risk of harm because of the family's unsuccessful child welfare history: the substantiated allegations of sexual abuse and general neglect; the failure to benefit from 18 months of reunification services; and the failure to reunify. Father argues the previous substantiated allegations of sexual abuse and the failure to reunify are not reasons to sustain a finding under section 300, subdivision (b): "Evidence of past conduct, without more, is insufficient to support a jurisdictional finding under section 300. There must be some reason beyond mere speculation to believe the alleged conduct will recur." (*In re James R.* (2009) 176 Cal.App.4th 129, 136.) Here, however, the record established that mother failed to protect A.M. from father and that, in spite of the threat of losing Ja.O., mother continued to have a relationship with father and to join him in using drugs. Therefore, the parents' previous conduct could reasonably be thought to occur again and placed the newborn, J.O. at substantial risk of serious physical harm. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 104; *In re Solomon L.* (1987) 190 Cal.App.3d 11106, 1112-1113.) Thus, the allegations contained in paragraph b-2 supported a jurisdictional finding under section 300, subdivision (b).

Paragraph b-3 additionally alleged that father's previously substantiated allegations of sexual abuse of A.M., leading to the termination of parental rights for Ja.O., also placed J.O. at substantial risk of harm. Furthermore, paragraph b-4 alleged father had a criminal history of domestic violence, driving under the influence, and

9

possession of a controlled substance, placing J.O. at substantial risk of harm. Facts supporting section 300 allegations may be cumulative. (*In re Hadley B.* (2007) 148 Cal.App.4th 1041, 1048-1050.) When considered all together, the allegations of the dependency petition fully justify the court assuming jurisdiction over J.O.

IV

JURISDICTIONAL FINDINGS UNDER SECTION 300, SUBDIVISION (j)

Subdivision (j) of section 300 applies if (1) the child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and (2) there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. Subdivision (j) further states: "The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is substantial risk to the child." (§ 300, subd. (j).)

Father argues that—although the first prong of subdivision (j) was met, based upon the substantiated allegation of sexual abuse of A.M.—the second prong was not proved and there was insubstantial evidence to conclude J.O. was at substantial risk of abuse or neglect.

The California Supreme Court recently affirmed the juvenile court's assertion of jurisdiction over a father's sons, pursuant to subdivision (j), based upon the father's

molestation of his daughter: "[W]hen a father severely sexually abuses his own child, the court may assume jurisdiction over and take steps to protect, the child's siblings." (*In re I.J.* (2013) 56 Cal.4th 766, 780.) Although father's behavior in this case was not as extreme as the father in *I.J.*, we still conclude father's abuse of A.M. and his neglect of his natural daughter, Ja.O., was significant enough to justify a concern for the safety of J.O.

According to the 2008 jurisdiction/disposition report, the family initially came to the attention of the agency due to allegations of emotional abuse to A.M. resulting from her witnessing domestic violence between father and mother. During that investigation, A.M. reported she had been molested by father. She described two incidents where father masturbated in front of her and one incident where father touched her genitals. She was also compelled to watch father and mother having sex. At a forensic interview, A.M. described two instances of molestation, one of which involved her touching father's penis. In 2002, father was also the subject of a substantiated sexual abuse allegation involving a 14-year-old girl, occurring six to eight times and consisted of fondling the minor's breasts and buttocks and exposing himself to her. Based on the totality of circumstances involving the abuse or neglect of J.O's siblings and other children, the trial court's jurisdictional findings under section 300, subdivision (j), are supported by substantial evidence. (*In re I.J., supra,* 56 Cal.4th at p. 780.)

11

## V

## DENIAL OF REUNIFICATION SERVICES

Pursuant to section 361.5, subdivision (b)(1)-(15), reunification services may be denied based on clear and convincing evidence. (§ 361.5, subd. (b).) Section 361.5, subdivision (b)(10) and (11), are among those paragraphs requiring a denial of services unless it is in the minor's best interest to order services. (§ 361.5, subd. (c).) A juvenile court exercises its discretion in deciding whether reunification services would be in the minor's best interest. (*In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197.) The appropriate test of abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Courts have noted that "Once it is determined one of the situations outlined in subdivision (b) applies, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. [Citation.]" (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478, cited by *In re Ethan N.* (2004) 122 Cal.App.4th 55, 65.)

To apply section 361.5, subdivision (b)(10) or (11), the juvenile court must find: (1) the parent previously failed to reunify with a sibling or half-sibling (subd. (b)(10)) or parental rights were terminated as to a sibling or half-sibling (subd. (b)(11)), and (2) the

parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96; *In re Harmony B.* (2005) 125 Cal.App.4th 831, fn. 5.) Here the juvenile court ordered termination of reunification services for J.O. because father had failed to reunify with Ja.O. after she was removed from the parents and father had not subsequently made a reasonable effort to treat the problems that led to removal of Ja.O. Section 361.5, subdivision (b)(11) also applies to father whose parental rights to Ja.O. have been terminated.

Father contends the juvenile court had discretion to order reunification services in J.O.'s best interest. Father demonstrated concern about caring for his son. He was present for the baby's birth and wanted to be together with mother. Father agreed to the safety plan and was visiting J.O. regularly. Since mother had placement of the child, allowing interaction with father was in J.O.'s best interest: "If the evidence suggests that despite a parent's substantial history of misconduct with prior children, there is a reasonable basis to conclude that the relationship with the current child could be saved, the courts should always attempt to do so. . . . The failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case. To the contrary, the primary focus of the trial court must be to *save* troubled families, . . ." (*Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464.)

13

Nothing in the record suggests that father would benefit from receiving additional reunification services or that he would be likely to complete any of the programs he previously abandoned. Father admits his reunification services and, subsequently, his parental rights as to Ja.O. were terminated. He did not complete sex offender treatment or heed the terms of his probation for the domestic violence offense. When J.O. was detained and subsequently, father has continued to violate the restraining order prohibiting contact with mother. Under these circumstances, father has not demonstrated it would be in the best interest of J.O. to reunify with father. (*In re Gabriel K., supra,* 203 Cal.App.4th at pp. 196-197.)

VI

DISPOSITION

Based upon the foregoing, we affirm the jurisdictional findings, the dispositional orders, and the juvenile court's order denying reunification services.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


RAMIREZ
P. J.


HOLLENHORST
J.

14